UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VSEVOLOD GARANIN, individually and as representative of the classes, AURIC INVESTMENT HOLDINGS LLC, FIRST RESPONSE MANAGMENT and SCRANTON PROPERTIES LLC. | CIVIL ACTION NO.: 3:23 cv 296  J. Arbuckel |
| Plaintiff, | |
| vs. | CLASS AND COLLECTIVE ACTION |
| SCRANTON HOUSING AUTHORITY, LACKAWANNA COUNTY, KARL LYNOTT individually, and in his capacity as the Deputy Executive Director of the Scranton Housing Authority, TERRENCE V. GALLAGHER, individually, and in his official capacity as the Magisterial Judge for the Commonwealth of Pennsylvania, CATHERINE A. GALLAGHER, individually, and in her official capacity as Solicitor for the Lackawanna County Clerk of Judicial Records and MICHAEL J. BARRASSE individually, and in his official capacity as the former President Judge for the 45th judicial district of the Commonwealth of Pennsylvania | JURY TRIAL DEMANDED  **FILED SCRANTON** FEB 21 2023 PER_____ DEPUTY CLERK |
| Defendants. | |

COMPLAINT

Plaintiffs, VSEVOLOD GARANIN, AURIC INVESTMENT HOLDINGS LLC, FIRST

RESPONSE MANAGMENT and SCRANTON PROPERTIES LLC (hereinafter collectively

referred to as "Plaintiffs"), pro se, hereby file this complaint against the above-captioned

Defendants and avers as follows:

## JURISDICTION & VENUE

1.     This action arises under the Thirteenth and Fourteenth Amendments to the United States Constitution along with the Traffic Victims Protection Act and is brought pursuant to 42 U.S.C. § 1983 and U.S.C. § 1985.

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 and the aforesaid statutory and constitutional provisions.

3.     Plaintiff further invokes diversity jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff is a resident of the State of New York and the amount in controversy exceeds $75,000.00.

4.     Plaintiff further invokes supplemental pendent jurisdiction under 28 U.S.C. § 1367(a) to adjudicate State Law claims.

5.     The unlawful actions alleged herein were committed in Scranton, Lackawanna County, Pennsylvania, which is located in the Middle District of Pennsylvania, and therefore, venue is proper in this Court.

6.     At all times relevant and material hereto, and with respect to all actions described herein, the defendants were acting under color of law and color of their authority as officials of the SCRANTON HOUSING AUTHORITY, in conspiracy with LACKAWANNA COUNTY and two (2) Judges of the Pennsylvania Judiciary acting outside of their judicial capacity.

7.     Defendant KARL LYNOTT acted under the color of law of his authority as the Deputy Executive Director of the Scranton Housing Authority to violate Plaintiff's constitutional rights.

8.      Defendant TERRENCE V. GALLAGHER acted under the color of law and color of his authority as a Magistrate Judge for the Commonwealth of Pennsylvania and acted outside of his judicial capacity to violate Plaintiff's constitutional rights.  T. GALLAGHER is also a Member of the Board of the HOUSING AUTHORITY.

9.      Defendant CATHERINE A. GALLAGHER acted under the color law and color of her authority as the Solicitor for the Lackawanna County Clerk of Judicial Records as part of a conspiracy to engage in tortious conduct against Plaintiff.

10.      Defendant MICHAEL J. BARRASSE acted under the color of law and color of his authority as the former President Judge for the 45th judicial district of the Commonwealth of Pennsylvania, being Lackawanna County, and hence the chief administrator for the Lackawanna County Judiciary.  Defendant MICHAEL J. BARASSE acted outside his judicial capacity and as the main administrator of the entire 45th judicial district at all times relevant herein, acted recklessly and with complete disregard for Plaintiff's constitutional rights in conjunction with defendant LACKAWANNA COUNTY.

11.      This action is brought against the individual defendants in their official capacities.

PARTIES

12.      Plaintiff, VSEVOLOD GARANIN (hereinafter "GARANIN"), is an individual residing at 10 Tupelo Court, Staten Island, NY 10306.

13.      Plaintiff, AURIC INVESTMENT HOLDINGS LLC (hereinafter "AURIC"), is a Delaware limited liability company which owned several investment properties in the City of Scranton and has its office address at 301 Howard Avenue, Staten Island, NY 10301.

14.     Plaintiff, FIRST RESPONSE MANAGMENT INC. (hereinafter "FIRST RESPONSE"), is a New Jersey corporation and has its office address at 301 Howard Avenue, Staten Island, NY 10301.

15.     Plaintiff, SCRANTON PROPERITES LLC (hereinafter "SCRANTON PROPERTIES"), is a Wyoming limited liability company and has its office address at 301 Howard Avenue, Staten Island, NY 10301.

16.     Defendant, LACKAWANNA COUNTY (hereinafter "COUNTY") is a government entity of the Commonwealth of Pennsylvania, which has offices located at 123 Wyoming Avenue, Scranton, PA 18503 and owns, operates, manages, directs, creates policy for, and controls the Lackawanna County Prison (hereinafter "the Prison") and its employees.

17.     Defendant SCRANTON HOUSING AUTHORITY (hereinafter "HOUSING AUTHORITY") is a public housing agency in Scranton, Pennsylvania that participates in Section 8 housing choice vouchers and public housing programs with an address of 400 Adams Avenue, Scranton, PA 18510. The HOUSING AUTHORITY is a Commonwealth agency.

18.     Defendant KARL LYNOTT (hereinafter "LYNOTT") is employed as the Deputy Executive Director of the HOUSING AUTHORITY with an official address of 400 Adams Avenue, Scranton, PA 18510.

19.     Defendant TERRENCE V. GALLAGHER (hereinafter "T. GALLAGHER") is employed as a Magistrate Judge for the Commonwealth of Pennsylvania with an official address of 1600 Farr Street, Scranton, PA 18504. At all times relevant herein, T. GALLAGHER was also a Board member of the HOUSING AUTHORITY.

20.     Defendant CATHERINE A. GALLAGHER (hereinafter "C. GALLAGHER") is employed as the Solicitor for LACKAWANNA COUNTY Clerk of Judicial Records with an official address of 123 Wyoming Avenue, Scranton, PA 18503.

21.     Defendant MICHAEL J. BARRASSE (hereinafter "BARRASSE") is employed by the Commonwealth of Pennsylvania as Judge for Lackawanna County Court of Common Pleas.  Defendant BARRASSE was also the President Judge and hence the main administrator of the entire 45th judicial district at all times relevant herein, being from January 4, 2016 until January 4, 2021.

22.     At all relevant times to this Complaint, all Defendants acted in concert and conspiracy with one another to improperly and / or unlawfully neglect, fail to treat, mistreat, inflict emotional distress on Plaintiff and otherwise deprive Plaintiff of rights guaranteed by the U.S. Constitution, the Constitution of the Commonwealth of Pennsylvania and the statutory rights under 42 U.S.C. § 1983 and U.S.C. § 1985.

23.     Defendants acted willfully, deliberately, maliciously and / or with reckless disregard of Plaintiff's Constitutional and Statutory Rights.

## PRELIMINARY STATEMENT

24.     On July 26, 2010 GARANIN (via an LLC), purchased his first property in Scranton, PA setting off a sequence of events that ultimately led to his signing of a plea agreement which contained material misrepresentations on June 6, 2018, his incarceration on January 8, 2019 and his work at the Recycling Center while incarcerated and the filing of this Complaint.

25.    Throughout the years and commencing on July 26, 2010, GARANIN built a large portfolio of real estate assets in the City of Scranton.

26.    Once the portfolio was large enough and GARANIN came into contact with various officials of Lackawanna County, a concentrated effort was commenced to destroy GARANIN's business in Lackawanna County (and more specifically in the City of Scranton) as detailed herein by various named defendants.


## FACTUAL ALLEGATIONS


27.    On March 29, 2016 at 2PM the HOUSING AUTHORITY inspected 436 Ripple Street (1st floor), Scranton, PA 18505 for a HOUSING AUTHORITY Section 8 voucher holder tenant Sheena Walker-Fish.

28.    436-438 Ripple Street, Scranton, PA 18505 was a building owned by a GARANIN affiliated and controlled entity.

29.    The HOUSING AUTHORITY provided an inspection report to GARANIN.  On Page 1, Section B being Summary Decision on Unit, an X is marked next to Pass (emphasis added) (**EXHIBIT A**).

30.    On April 4, 2016, GARANIN bound an insurance policy with Eerie Insurance based on this report.

31.    As further detailed herein, it was later discovered that the March 29, 2016 inspection report as provided to GARANIN by the HOUSING AUTHORITY was erroneous and negligent.

32.     On October 14, 2016 GARANIN on behalf of the entity owning the 436-438 Ripple Street, Scranton, PA 18505 property at the time, made an insurance claim to Eerie Insurance.

33.     On May 24, 2017 GARANIN officially discontinued the insurance claim after finding out that the April 4, 2016 HOUSING AUTHORITY report was erroneous and negligent.

34.     Nevertheless, on June 7, 2017, the Lackawanna County District Attorney's Office filed six (6) felony charges against GARANIN and the entity owning the 436-438 Ripple Street, Scranton, PA 18505 property at that time.

35.     On or around July 2017, GARANIN (who was residing in New York State at the time) was contacted by Detective Colon from the Lackawanna County District Attorney's Office and appraised of the criminal charges filed against him.

36.     On August 29, 2017 GARANIN promptly turned himself in and was arraigned at the Magisterial District Court 45-1-03 in Scranton, PA.

37.     On September 26, 2017 a Section 8 inspection was finalized at 1219 Jackson Street, Scranton, PA 18504 by the HOUSING AUTHORITY.

38.     On September 26, 2017 the 1217-1219 Jackson Street, Scranton, PA 18504 property was owned by Historic Prop Holdings 2 LLC, a GARANIN controlled and affiliated company.

39.     On September 27, 2017, a tenant holding a Section 8 voucher moved into the 1219 Jackson Street, Scranton, PA 18504 unit after the Section 8 inspection passed the previous day, which is consistent with protocol.

40.     On September 29, 2017 LYNOTT unilaterally overturned the decision of the Section 8 housing inspector without providing GARANIN an opportunity to cure any alleged defects.

41.     LYNOTT further unilaterally withheld all HOUSING AUTHORITY payments to any entity affiliated with GARANIN for October 2017.

42.     Each entity in question had a separate EIN, separate assets / liabilities and were completely separate entities.

43.     Nevertheless, and in retaliation for GARANIN's displeasure of LYNOTT, LYNOTT disregarding all basic legal and / or accounting principles, unilaterally withheld all HOUSING AUTHORITY checks from every and any entity just simply because they were affiliated with GARANIN.

44.     Furthermore, LYNOTT purposefully and improperly reached out to the Lackawanna County District Attorney's office and interfered with a pending investigation by having undisclosed conversations regarding GARANIN's pending criminal charges from June 7, 2017.

45.     On November 14, 2017, GARANIN on behalf of the entity which owned the 436-438 Ripple Street, Scranton, PA 18505 property at the time was forced to sue the HOUSING AUTHORITY and LYNOTT at the Magisterial District Court 45-1-02.

46.     Only after the commencement of the action, did LYNOTT authorize the release of the unilaterally withheld HOUSING AUTHORITY payments to the GARANIN affiliated entities.

47.    The Magisterial District Court eventually ruled in Plaintiff's favor with cost of filing assigned as judgment for Plaintiff as the amounts in question were indeed already released by LYNOTT.

48.    On June 6, 2018 GARANIN pled guilty to an attempted theft by deception – failure to correct [a report] crime (18 PA C.S.A. § 3922(a)(3) being an inchoate crime under P.A. C.S.A. § 901.

49.    GARANIN pled guilty to this crime as his criminal counsel at the time failed to advise him that his voluntary discontinuance of the insurance claim is a defense to the alleged crime.

50.    Furthermore, GARANIN pled guilty to this crime by way of a negotiated plea agreement with the explicit condition that all other charges are N[olle] P[rossed] as represented on the June 6, 2018 Guilty Plea Colloquy (**EXHIBIT B**).

51.    In the Guilty Plea Colloquy, GARANIN stated that he "attempted to obtain payment by failing to *correct a false impression* on a report [to Eerie Insurance]."

52.    As further explained herein, the COUNTY with the tacit support of the Lackawanna County Court of Common Pleas judiciary and BARRASSE provided a negligent plea agreement to GARANIN for signature.

53.    The COUNTY had a duty to provide the correct information to GARANIN by way of a correct plea agreement, with correct representations, which it failed to do.

54.    Any confusion in the COUNTY's own agreements are invalidated pursuant to the Contra Proferentem doctrine.

55.    GARANIN signed the negligent plea agreement provided to him by the COUNTY.

56.     On January 7, 2019, GARANIN advised his criminal attorney that he wanted to withdraw his plea, proceed to trial and assert his innocence.

57.     On January 8, 2019, BARRASSE refused to allow GARANIN to withdraw his plea and proceed to trial and sentenced GARANIN to a three (3) month incarceration, followed by three (3) months House Arrest and followed by forty-two (42) months of probation for the misdemeanor crime.   GARANIN has completed his criminal forty-eight (48) month sentence inclusive of incarceration, house arrest and probation.

58.     On January 8, 2019 while GARANIN was being booked in the Prison, an Intake Nurse conducted a medical intake screening of GARANIN.

59.     GARANIN advised of his injury / surgery from January 16, 2018 where he fully ruptured his patellar tendon and his continued need for physical therapy.

60.     GARANIN further advised the Intake Nurse that he was attending physical therapy after his surgery and prior to his incarceration.

61.     On January 8, 2019, the Intake Nurse advised that she will be requesting GARANIN's medical records from the Orthopedic Surgeon who performed the surgery on GARANIN.

62.     GARANIN was immediately interested in exploring work release or being released under house arrest as his daughter was one month old at the time.

63.     On January 9, 2019 (after spending his first night in the Prison), GARANIN wrote a Lackawanna County Prison Inmate Request form to prison staff stating:

*I am respectfully requesting an opportunity to work and participate in the work-release program. I have been sentenced to 3 months incarceration and would like to be a productive addition to society while incarcerated.*

64.     The work-release program was explained to GARANIN as a chance to work outside of the Prison by way of checking in at a specific location in Lackawanna County and advising on the progress of his job (being the same concept as House Arrest, except with work obligations).  Since GARANIN had a large portfolio of real estate assets in Lackawanna County at the time, he would not need to find employment as he already had his self-employed status and can easily work by maintaining his real estate portfolio in Lackawanna County.

65.     Within several days of arriving at the Prison, Prison staff told GARANIN in unequivocal terms that in order to qualify for work release or early release for house arrest, GARANIN would have to work at the Recycling Center.   Prison staff and Thomas Staff specifically also told GARANIN that he would be paid $5.00 per day while working in the Recycling Center.

66.     At no time was it explained to GARANIN that working at the Recycling Center is part of the work-release program or any Community Service Program.

67.     GARANIN wanted to be freed as soon as possible.

68.     No choice was ever provided between working at the Recycling Center (it is still not clear to GARANIN if the Recycling Center is part of the work-release program, the Community Service program, both or neither) or actual work-release working outside the Prison at a real job with an appropriate salary under federal and state laws (or as related to GARANIN's case being self-employed and paying himself distributions of earned income from his business activities).

69.     Nevertheless, and on February 4, 2019, without GARANIN's request for such relief, BARRASSE signed and Order stating *inter alia*:

> [GARANIN] is granted Community Services status for the purposes of participating in Community Services Program.  This inmate [GARANIN] will be residing at the

Lackawanna County Prison while performing Community Service in the Recycling Center or Associated Program.  Violation of this interim Program will result in termination from the Program.
IT IS FURTHER DIRECTED that the above-named is to be granted Work Release/House Arrest status on 04/08/19 contingent upon his successful completion of the Community Services Program. (EXHIBIT F).

(Emphasis added)

70.     It is noteworthy that 04/08/19 would be the release date anyways after the completion of the three (3) month incarceration sentence (emphasis added).

71.     Nevertheless GARANIN was granted "community service" to work at a Recycling Center for $5.00 daily seemingly in exchange for his request to be a productive addition to society and obtain early release.

72.     GARANIN was deceived and coerced into requesting participation in working at the Recycling Center under the guise of a real work-release Program and early release.

73.     Furthermore, Pennsylvania Sate law specifically addresses the purpose of work release programs which must serve several statutory purposes, specifically to i.) promote accountability of offenders to their community, ii.) to provide opportunities for offenders to enhance their ability to become contributing members of the community and iii.) to protect society.

74.     BARRASSE, as the main administrator of the Lackawanna County Court Judiciary at all relevant times herein, completely ignored these statutory purposes and designed and implemented the COUNTY's work-release program in a manner directly at odds with these purposes, manipulating the qualification standards for work-release eligibility solely to gain pecuniary benefit for a profit-making enterprise being the Lackawanna County Recycling Center, Inc.

75.   Lackawanna County Recycling Center, Inc. is a profit-making enterprise operating the Lackawanna County Recycling Center pursuant to an Operating Agreement between itself and the Lackawanna County Solid Waste Authority.

76.   From 2006 until 2020, a fourteen (14) year period Lackawanna County Solid Waste Management Authority and the Lackawanna County Recycling Center, Inc. have been parties to an Operating Agreement regarding the operation of the Recycling Center in Lackawanna County.

77.   The Operating Agreement is dated May 3, 2006 and had an initial duration of five (5) years.

78.   Under the terms of the Operating Agreement, provided that neither party was in default, the Operating Agreement would renew for four additional five-year terms under the same terms and conditions, unless Lackawanna Recycling Center Inc. advised the Lackawanna County Solid Waste Management Authority, in writing at least six months prior to the expiration of the existing term that Lackawanna Recycling Center Inc. did not intend to renew the Agreement.

79.   Upon information and belief, the Operating Agreement between the parties was terminated in 2020.

80.   Under the terms of the Operating Agreement, Lackawanna County Recycling Center Inc. has the "overall responsibility for the management and operation services related to vehicles, equipment, and plant improvements and sole responsibility for all personnel related thereto."

81.     Under the terms of the Operating Agreement, Lackawanna County Recycling Center Inc. agrees to "supervise, direct and control the management and operation of the Recycling Center upon the terms and conditions set forth in [the] Agreement."

82.     Under the terms of the Operating Agreement, Lackawanna County Recycling Center Inc. is "responsible for the selection, employment, termination of employment, supervision, direction, training and assigning of the duties of all employees at the Recycling Center.   The selection, terms of employment and termination thereof, including rates of compensation and benefits, if any, and the supervision, direction, training and assignment of duties of all such employees shall be the duty and responsibility of [Lackawanna County Recycling Center Inc.].  All salaries, wages and benefits, if any of such employees shall be paid by [Lackawanna County Recycling Center Inc.] and such employees shall be the employees and agents of [Lackawanna County Recycling Center Inc.] and not the Lackawanna County Solid Waste Management Authority.

83.     Under the terms of the Operating Agreement, the Lackawanna County Solid Waste Management Authority "shall remain in existence, shall remain sole owner of the facility, and shall retain administrative, financial and operational control of the Center and the Center Assets, subject to the terms and conditions of this agreement[.]"

84.     Under the terms of the Operating Agreement, the Lackawanna County Solid Waste Management Authority agrees to provide Lackawanna County Recycling Center Inc. with "the same number of Prisoners from the Lackawanna County Prison that have historically worked at the Center as part of their work release program as security requirements dictate."

85.     Lackawanna County Recycling Center, Inc. is owned by Louis DeNaples.

86.     Louis DeNaples is a donor to BARRASSE's campaign.

87.     BARRASSE, acting outside his judicial capacity, implemented policies and procedures wherein prisoners are able to be granted "community service" and work in the Recycling Center while incarcerated for $5.00 daily.

88.     Such "community service" entailed prisoners working at the Recycling Center for $5.00 daily while incarcerated, in complete contravention of the Commonwealth's statutory purposes of work-release programs and community service.

89.     Defendant BARRASSE's purposefully enacted this policy and procedure to exploit prisoners and have them sign up for "community service" and work for $5.00 per day at the Recycling Center Inc.

90.     Such judicial cozying with a profit making enterprises to obtain prisoner labor below Pennsylvania minimum wage laws, in violation of the Fair Labor Standards Act and under false promises of early release is very troubling to say the least.

91.     This relationship between the chief administrator of the Lackawanna County Judiciary, Lackawanna County itself and its best known entrepreneur being Louis DeNaples, represents a quid pro quo for the respective parties and amounts to prisoners for cash.

92.     Per the Order from BARRASSE, no real work-release program existed during the three (3) month incarceration and the only "option" or "choice" was to work at the Recycling Center for $5.00 daily under the false promise of early release from incarceration.

93.     Such deceit and coercion by the COUNTY, aided and abetted by the Lackawanna County judiciary and BARRASSE as chief administrator of the scheme was meant to employ as many prisoners as possible at the Recycling Center to obtain profit for a profit-making enterprise.

94. LACKAWANNA COUNTY perpetuated a false impression which BARRASSE failed to correct and only encouraged.

95. BARRASSE, acting outside his judicial capacity, conspired with the COUNTY to employ as many prisoners as possible at the Recycling Center.

96. This practice was long-standing and pervasive in Lackawanna County for a fourteen (14) year period with the explicit support of the judiciary and BARRASSE specifically being the President Judge who was responsible for all administrative duties of the Lackawanna County Court of Common Pleas..

97. Accordingly, BARRASSE should have known how such a practice of coercion violated each prisoner's constitutional rights including GARANIN's but continued to aid and abet this practice outside his judicial capacity.

98. On February 5, 2019, GARANIN was "granted community service program" and sent to work at the Recycling Center under the false impression of early release.

99. On February 22, 2019, GARANIN was removed from working at the Recycling Center by the COUNTY and sent back to general population due to his "bad knee" which the Intake Nurse knew off immediately when GARANIN was booked at the Prison on January 8, 2019.

100. On April 8, 2019, GARANIN was finally released from the Prison on the same date pursuant to the three (3) month incarceration and not early per the representation of prison staff if he signed up to work at the Recycling Center.

101. GARANIN was not released early in spite of working at the Recycling Center.

102. During GARANIN's time building and expanding his business in Lackawanna County, GARANIN came to the attention of Magisterial Judge T. GALLAGHER, who is a

personal friend of BARRASSE and who also is a Board Member of the HOUSING AUTHORITY.

103.    GARANIN's employees / agents and numerous times GARANIN personally attended standard landlord - tenant hearings in front of T. GALLAGHER throughout the last decade.

104.    T. GALLAGHER has unfortunately always acted in extreme bad faith towards GARANIN and / or his entities operating in the City of Scranton.

105.    T. GALLAGHER has made such statements as "You think you are special because you are from New York" directly to GARANIN.

106.    T. GALLAGHER has admonished GARANIN's employees / agents for working for GARANIN.

107.    During GARANIN's three (3) month incarceration and with an opportunity at hand, T. GALLAGHER took his behavior to a new level and attempted to destroy GARANIN's business in the City of Scranton.

108.    During standard landlord-tenant hearings while GARANIN was incarcerated and attended by GARANIN's employees or agents on behalf of GARANIN's business FIRST RESPONSE INC., T. GALLAGHER acted outside his judicial capacity and directed City of Scranton officials to go to the properties in question and close GARANIN's properties.

109.    T. GALLAGHER knew that GARANIN was incarcerated and deprived GARANIN of due process by acting outside his judicial capacity in an attempt to close GARANIN's properties (as managed by FIRST RESPONSE INC.) located at 1139 Rock Street (2nd floor), Scranton, PA 18504 and 145 S. Lincoln Avenue, Scranton, PA 18504.

110.    This shocking, yet unfortunately common behavior from Lackawanna County officials was the subject of a Commonwealth of Pennsylvania Judicial Conduct Board complaint.

111.    On February 10, 2021 the Commonwealth of Pennsylvania Judicial Conduct Board sent a Letter of Caution to T. GALLAGHER as related to his actions and behavior towards GARANIN, his companies and his properties in the City of Scranton (**EXHIBIT C**).

112.    On April 8, 2020 GARANIN was released from the Prison and commenced his three (3) month sentence of House Arrest in Lackawanna County.

113.    GARANIN immediately requested and received permission from his probation officer to recommence physical therapy in Lackawanna County which he did.

114.    On September 23, 2019, BARRASSE filed his opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure as related to GARANIN's appeal of BARRASSE's January 16th, 2020 Decision denying GARANIN's Petition to Expunge Record.

115.    In the Opinion and by way of footnote 1, BARRASSE explains:

As a supplemental to this Court's January 16, 2020 denial order, this Court notes that pursuant to Lackawanna County practice the notation of the guilty plea colloquy "all other charges N.[olle] P.[rossed]" on the docket, and in this Court's January 16, 2020 order is nomenclature for the Commonwealth's decision to drop/dismiss charges pursuant to a plea agreement, and as the record indicates carries no such implicit admission that proof is lacking.  The record reveals this notation is simply part of a bargain with the Appellant to avoid a trial in exchange for a plea to lesser charges.  See Commonwealth v. Waughtel, 999 A.2d 623, 626-627 (PA. Super. 2010).  This Court further acknowledges that while this nomenclature is confusing, it is this Court's experience in Lackawanna County that a nolle prosse occurs via separate court Order signed by the Commonwealth and this Court does not have the same implications as dismissal of charges due to a plea agreement (See attached example).  A separate nolle prosse order does not exist in this case nor is a part of the record.  This Court clarifies, and the record reveals that dismissal of charges pursuant to a plea agreement occurred with no agreement as to expungement in the present matter.  In recognition of this distinction between plea agreements and term nolle prosse situations, this Court will direct Lackawanna County to cease nomenclature practice of the term nolle prosse in future criminal matters and utilize the word "dismissed" when applicable. (**EXHIBIT D**).

116.   Accordingly, the COUNTY perpetuated a false impression to GARANIN by way of the proposed plea agreement and failed to correct this false impression until the September 23, 2020 opinion of BARRASSE (at which time it was too late for GARANIN already whom by now served a three-month incarceration and 3-month house arrest and who just finalized his probation today January 9, 2023).

117.   Such a false impression induced GARANIN into signing the plea agreement and pleading guilty to the aforementioned misdemeanor crime (a Post Conviction Relief Act petition was filed on September 17, 2021 as related to the underlying criminal charges from June 7, 2017. Pursuant to continuous bad faith tactics from the prosecuting authority, being the Lackawanna County District Attorney's Office, the DA's office did not respond to the PCRA until after the criminal sentence expired to purposefully render it moot).

118.   The COUNTY had a pervasive and long-standing practice of providing erroneous and confusing plea agreements to criminal defendants prior to September 23, 2020 which upon information and belief was finally corrected after September 23, 2020.

119.   Accordingly, all criminal defendants who entered into such plea agreements with *false impressions* could not have done so knowingly, intelligently and voluntarily as they were misrepresented to by the COUNTY.

120.   It is noteworthy to add that for the COUNTY who is encumbered with the highest standard of accuracy as a prosecuting authority, this is just simple confusion, but for GARANIN who failed to correct a report (without any intent to defraud as he voluntarily withdrew his insurance claim prior to any filing of criminal charges), this is a criminal sentence worthy of a three (3) month incarceration.

121.    LYNOTT who was formerly employed by the Lackawanna County District Attorney's office and is a personal friend of BARRASSE continued to act with hostility and animus towards GARANIN.

122.    On December 7, 2020, GARANIN reached a deal to purchase the company SCRANTON PROPERTIES LLC (through his holding company GARANIN PROPERTIES LLC) with first a 20% share purchase effectuated on December 7, 2020 and the final 80% on March 31, 2021.

123.    On the following day, being December 8, 2020 GARANIN officially took over the day-to-day operations of SCRANTON PROPERTIES LLC and became its CEO.

124.    GARANIN immediately took it upon himself to address several issues at the 225 N. Bromley Avenue, Scranton, PA 18504 property owned by SCRANTON PROPERTIES LLC as provided by the deficiency letter from the HOUSING AUTHORITY (EXHIBIT I).

125.    The deficiency letter from the HOUSING AUTHORITY provided until Monday, January 4, 2021 to cure the deficiencies being:

    a.  Extremely stained ceiling blocks from water damage - replace ceiling blocks with new ones (pictures included)

    b.  Bottom portion of back door is broke and opened up-cold air coming through- repair immediately (picture included).

126.    The deficiencies were finalized prior to the end of 2020.

127.    Nevertheless, on January 6, 2021, the HOUSING AUTHORITY sent a letter to SCRANTON PROPERTIES LLC terminating the 225 N. Bromley, Scranton, PA 18504 contract effective February 28, 2021 due to "Failed Housing Quality Standards."

128.    GARANIN attempted to have LYNOTT meet him at the property to prove that the deficiencies were indeed completed.

129.    Once again LYNOTT acted in bad faith and refused to acknowledge that GARANIN was the CEO of SCRANTON PROPERTIES LLC in light of the CEO letter being provided to LYNOTT on numerous occasions.

130.    On January 25, 2021 LYNOTT wrote GARANIN "Mr. Yen [GARANIN's partner in SCRANTON PROPERTIES LLC at the time] must attend, ok. Thanks. (LYNOTT did, however, come to the 1219 Jackson Street, Scranton, PA 18504 three (3) years earlier to overturn the HOUSING AUTHORITY's decision to the detriment of GARANIN simply relying on the fact that GARANIN claimed to be the owner of Historic Prop Holdings 2 LLC and with absolutely no confirmation of shareholder structure and / or authorization status for Historic Prop Holdings 2 LLC.  Why in 2021 and three (3) years later, LYNOTT refused to honor a CEO letter executed by Mr. Yen remains unbeknownst to GARANIN.

131.    Although the HOUSING AUTHORITY's own January 6, 2021 letter stated that the contract is terminated on February 28, 2021 (with a rational conclusion being that the February, 2021 HOUSING AUTHROITY check payment would be sent), LYNOTT once again unilaterally withheld the February 2021 check to SCRANTON PROPERTIES LLC.

132.    Yet again, GARANIN was forced to sue in Magisterial Court (which became Docket Number MJ-45101-LT-0000063-2021).

133.    LYNOTT completely ignored a subpoena issued to him by MDJ 45-3-03 for the Magisterial Court hearing scheduled for May 12, 2021 in front of the Magisterial Judge Sean McGraw located in Carbondale, PA.

134.   The hearing proceeded without LYNOTT who ignored the subpoena (as seemingly the laws in Lackawanna County only apply to those they are supposed to apply to.)

135.   Finally, and as a final example of the extreme level of scienter and hostility from Lackawanna County officials against GARANIN, CATHERINE A. GALLAGHER's disobedience of state court directives are striking along with the application of laws only to those who Lackawanna County officials deem they need to be applied to.

136.   On January 26, 2021, the Superior Court of Pennsylvania ruled that the Criminal Judgment of Sentence imposed on AURIC INVESTMENT HOLDINGS LLC by the Lackawanna Court of Common Pleas "is a nullity without legal effect."

137.   AURIC INVESTMENT HOLDINGS LLC, a GARANIN controlled entity paid a Criminal (emphasis added) Judgment of Sentence fine previously.

138.   After conversations with CATHERINE A. GALLAGHER in her capacity as the Solicitor for the Lackawanna COUNTY Clerk of Judicial Records, CATHERINE A. GALLAGHER refused to refund AURIC INVETSMENT HOLDINGS LLC the criminal Judgment of Sentence penalty already paid in light of the Superior Court's Decision and Order "nulli[fying]" the criminal judgment of sentence.

139.   On May 10, 2021, GARANIN on behalf of AURIC INVESTMENT HOLDINGS LLC sent an official demand to CATHERINE A. GALLAGHER for the refund to be issued.

140.   As of the date of the filing of this Complaint, CATHERINE A. GALLAGHER has completely ignored the request for refund thusly disobeying the Superior Court of Pennsylvania's Decision.

141.    On December 9, 2021, SCRANTON PROPERTIES LLC and the HOUSING

AUTHORITY reached a settlement to the Magisterial District Court matter after the requested

amount was finally agreed to be paid.


## COUNT I – CLASS ALLEGATIONS

### Aiding and Abetting Violation of the Trafficking Victims Protection Act

### (GARANIN v. BARRASSE)

142.    The foregoing paragraphs of this Complaint are hereby incorporated by reference

as if more fully set forth herein.

143.    During all relevant times, defendant knowingly aided and abetted the obtainment

of the labor of Plaintiff and other prisoners.

144.    Defendant BARRASSE implemented policies and procedures as the President

Judge of 45th judicial district of the Commonwealth of Pennsylvania by tacitly supporting this

behavior of defendant COUNTY.  As the former President Judge of the 45th judicial district of

the Commonwealth of Pennsylvania during all times relevant herein, BARRASSE should have

known the implications of these policies and procedures on advisement of the COUNTY to grant

"Community Service" that violate the Trafficking Victims Protection Act and hence aided and

abetted the illegal behavior of defendant COUNTY outside his judicial capacity.

145.    As the former main administrator of the Lackawanna County judiciary,

BARRASSE implemented policies and procedures which violated the Trafficking Victims

Protection Act.  Such implementing of policies and procedures to obtain as much underpaid

prisoner labor as possible for a profit-making enterprise is outside of judicial capacity and in

violation 15 U.S.C. § 1589(a)(1).

146.    Plaintiff GARANIN brings Count I of behalf of himself and the following class:

All prisoners who worked in the Lackawanna County Recycling Center while serving criminal sentences at the Lackawanna County Prison pursuant to the contract between the Lackawanna County Solid Waste Management Authority and Lackawanna County Recycling Center, Inc. between the earliest applicable statute of limitations and the date of final judgment in this action (the "Recycling Center Prisoner Employees Rule 23 Class")

147.    The persons in this Rule 23 Class are so numerous that joinder of all members is impracticable.

148.    Although the precise number of such persons is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendant who implemented the work-release and community services programs in Lackawanna County and thereafter signed Orders to have each prisoner work at the Lackawanna County Recycling Center.

149.    Upon information and belief, the Recycling Center Prisoner Employees Rule 23 Class consists of more than 100 members.

150.    Plaintiff GARANIN will fairly and adequately protect the interests of the Recycling Center Prisoner Employees Rule 23 Class.

151.    Defendants have acted or refused to act on grounds generally applicable to the Recycling Center Prisoner Employees Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

152.    Common questions of law and fact exist as to the Recycling Center Prisoner Employees Rule 23 Class and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

a. Whether defendant, acting outside of his judicial capacity and as the chief administrator, implemented policies and procedures in Lackawanna County, which aided and abetted the County's obtainment of the Recycling Center Prisoner Employees 23 Class labor under coercion;

b. Whether defendant's implementation of policies and procedures which required Recycling Center Prisoner Employees Rule 23 Class to work at the Recycling Center to obtain "early release" violates 18 U.S.C. § 1589;

c. The nature and extent of class-wide injury and the measure of damages for those injured.

153.    Plaintiff's claims are typical of the claims of the Recycling Center Prisoner Employees Rule 23 Class which he seeks to represent.   Plaintiff and the Recycling Center Prisoner Employees Rule 23 Class were all prisoners of Lackawanna county Prison who were coerced into working at the Recycling Center in order to obtain early release from incarceration.

154.    Plaintiff and the Recycling Center Prisoner Employees Rule 23 Class all sustained similar types of damages as a result of defendant's violation of law.

155.    Plaintiff will fairly and adequately represent and protect the interests of the Recycling Center Prisoner Employees Rule 23 Class.   Although plaintiff is acting in a pro se capacity, plaintiff has had significant experience litigating complex federal questions.   In the event that this honorable court feels it necessary that plaintiff obtain experienced counsel to protect the interests of the Recycling Center Prisoner Employees Rule 23 Class, plaintiff is ready to proceed with various constitutional accountability law firms.

156.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation because numerous identical lawsuits alleging identical causes of

action would not serve the interests of judicial economy. The members of the Recycling Center Prisoner Employees Rule 23 Class have been damaged and are entitled to recovery as a result of defendant's common and uniform implementation of policies and procedures aiding and abetting the exploitation of prisoner labor for pecuniary gain.

157.    Although the relative damages suffered by individual Recycling Center Prisoner Employees Rule 23 Class Members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments against defendant's practices.

COUNT II – CLASS ALLEGATIONS

42 U.S.C. § 1983 – Fourteenth Amendment<br>to the United States Constitution

Procedural Due Process

(GARANIN v. COUNTY)

158.    The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

159.    During all relevant times, defendant recklessly obtained signatures of criminal plea agreements falsely representing the nature of Nolle Prossed charges:

160.    Plaintiff GARANIN brings Count II of behalf of himself and the following class:

> All individuals charged with crimes by the Lackawanna County District Attorney's Office, who accepted plea agreements with all other charges Nolle

26

Prossed prior to September 21, 2020 (the "Nolle Prossed Individuals Rule 23 Class").

161.    The persons in this Rule 23 Class are so numerous that joinder of all members is impracticable.

162.    Although the precise number of such persons is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendant who has records and knowledge of all individuals who signed plea agreements pursuant to criminal charges that contained a provision of all other charges Nolle Prossed.

163.    Upon information and belief, the Nolle Prossed Individuals Rule 23 Class consists of more than 100 members.

164.    Plaintiff GARANIN will fairly and adequately protect the interests of the Nolle Prossed Individuals Rule 23 Class.

165.    Defendants have acted or refused to act on grounds generally applicable to the Nolle Prossed Individuals Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

166.    Common questions of law and fact exist as to the Nolle Prossed Individuals Rule 23 Class and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

1.    Whether defendant misrepresented the contents of plea agreements to each of the Nolle Prossed Individuals Rule 23 Class as related to the true nature of Nolle Prossed charges;

2.    Whether defendant's misrepresentation falls fatally short of due process as enshrined in the U.S Constitution for each criminal defendant charged with crimes by the Lackawanna County District Attorney's Office;

3. Whether defendant's misrepresentation in the plea agreements fatally short of procedural due process;

4. Whether the Contra Proferentum doctrine invalidates each and every plea agreement signed where all charges where Nolle Prossed prior to September 21, 2020;

5. The nature and extent of class-wide injury and the measure of damages for those injured.

167. Plaintiff's claims are typical of the claims of the Nolle Prossed Individuals Rule 23 Class he seeks to represent. Plaintiff and the Nolle Prossed Individuals Rule Rule 23 Class were all criminal defendants who signed plea agreements under a *false impression*.

168. Plaintiff and the Nolle Prossed Individual Rule 23 Class all sustained similar types of damages as a result of defendant's recklessness as they did not enter their pleas knowingly and intelligently.

169. Plaintiff will fairly and adequately represent and protect the interests of the Nolle Prossed Individual Rule 23 Class. Although plaintiff is acting in a pro se capacity, plaintiff has had significant experience litigating complex federal questions. In the event that this honorable court feels it necessary that plaintiff obtain experienced counsel to protect the interests of the Nolle Prossed Individual Rule 23 Class, plaintiff is ready to proceed with various constitutional accountability law firms.

170. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy. The members of the Nolle Prossed Individual Rule 23 Class have been damaged and are entitled to recovery as a result of

defendant's common and uniform recklessness in providing plea agreements with material misrepresentations of the status of the remaining charges..

171.   Although the relative damages suffered by the Nolle Prossed Individual Rule 23 Class Members are no de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments against defendant's practices.

COUNT III

42 U.S.C. § 1983 – Fourteenth Amendment
to the United States Constitution

Procedural Due Process

(FIRST RESPONSE INC and GARANIN v. T. GALLAGHER)

172.   The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

173.   T. GALLAGHER has exhibited a long history of animus and scienter against GARANIN as described above.

174.   GARANIN had a constitutionally protected interest in the 145 S. Lincoln Avenue, Scranton, PA 18504 and the 1137-1139 Rock Street, Scranton, PA 18504 properties.

175.   FIRST RESPONSE INC is a GARANIN operated entity which managed the 145 S. Lincoln Avenue, Scranton, PA 18504 and the 1137-1139 Rock Street, Scranton, PA 18504 properties and was the Plaintiff in standard landlord - tenant hearings in front of T. GALLAGHER.

29

176.   T. GALLAGHER's direction to City of Scranton officials to close and / or condemn the 145 S. Lincoln Avenue, Scranton, PA 18504 and the 1137-1139 Rock Street, Scranton, PA 18504 properties, were undertaken without the benefit of notice to Plaintiffs or an opportunity to cure any purported deficiencies.

177.   T. GALLAGHER acted outside his judicial capacity as a Commonwealth of Pennsylvania Magistrate Judge to violate plaintiff's constitutional rights.

178.   T. GALLAGHER's actions were in violation of the Plaintiff's procedural due process rights guaranteed by the Fourteenth Amendment to the United Constitution as no emergency existed to warrant an immediate condemnation or closure of said properties and a pre-deprivation notice and hearing was feasible.

179.   Furthermore, T. GALLAGHER does not even have the authority to close / condemn properties in the City of Scranton but attempted to use his position of power as a Magistrate Judge and acting under the color of law in order to attempt and intimidate others to do so.

180.   As a consequence and result of the aforesaid acts of T. GALLAGHER, Plaintiffs have suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by the interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by defendant T. GALLAGHER.


COUNT IV

42 U.S.C. § 1983 – Fourteenth Amendment
to the United States Constitution

Equal Protection

(AURIC INVESTMENT HOLDINGS LLC, SCRANTON PROPERTIES LLC, FIRST

RESPONSE INC and GARANIN v. T. GALLAGHER, HOUSING AUTHORITY, LYNOTT,

COUNTY and CATHERINE A. GALLAGHER)

181. The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

182. The HOUSING AUTHORITY and LYNOTT have engaged in the intentional, purposeful, unequal and discriminatory enforcement of the HOUSING AUTHORITY's policies and procedures against Plaintiffs SCRANTON PROPERTIES LLC and GARANIN.

183. Defendants HOUSING AUTHROITY and LYNOTT have administered the policies and procedures of the Scranton Housing Authority with an evil intent and an unequal hand, so as to illegally discriminate against SCRANTON PROPERTIES and GARANIN.

184. Defendants HOUSING AUTHORITY and LYNOTT conspired and acted in concert to intentionally apply the policies and procedures of the HOUSING AUTHORITY in a different and more onerous manner than applied to other similarly situated individuals based on Plaintiff's exercise of their First Amendment rights to petition the government.

185. The policies and procedures of the HOUSING AUTHROITY have not been enforced in a uniform fashion by LYNOTT, but instead Plaintiffs have had provisions applied to them that have not been uniformly applied to all others similarly circumstanced.

186. The enforcement of the HOUSING AUTHORITY's policies and procedures is arbitrary, capricious and particularly directed against Plaintiff SCRANTON PROPERTIES LLC and GARANIN based on their expression of ideas and opinions, and enforcing their right to

petition the government, in violation of their rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

187.   The HOUSING AUTHORITY, through the aforesaid acts and knowledge of LYNOTT, has caused, directed approved and ratified the aforesaid actions which constitute violations of Plaintiff's constitutional rights.

188.   LYNOTT's aforesaid enforcement of the HOUSING AUTHORITY's policies and procedures violates the equal protection clause of the Fourteenth Amendment.

189.   As a consequence of and result of the aforesaid acts of the LYNOTT and the HOUSING AUTHORITY, Plaintiffs have suffered economic loss, loss of income, sever mental anguish, emotional distress, impairment of their reputation and embarrassment, incurred damages caused by interference of their businesses, and were required to spend substantial sums of money and time in defending themselves from the actions taken against them by the defendants.

190.   T. GALLAGHER utilized his position of power as a Magistrate Judge for the Commonwealth of Pennsylvania and engaged in the intentional, purposeful, unequal and discriminatory enforcement of the City of Scranton's laws, policies, ordinances, policies and procedures by acting outside of his judicial capacity to treat Plaintiffs FIRST RESPONSE INC and GARANIN differently.

191.   T. GALLAGHER does not have the authority to close and / or condemn properties in the City of Scranton, however attempted to do so by directing City officials to close GARANIN's properties managed by FIRST RESPONSE INC.

192.   T. GALLAGHER has no authority to direct City of Scranton officials to close or condemn other properties from other landlords who appear in front of him at standard landlord -

tenant hearings, except for GARANIN and GARANIN affiliated entities.   Specifically, properties of Adam Giuffrida were never directed to be closed or condemned.

193.   T. GALLAGHER conspired and acted in concert to destroy GARANIN's business in the City of Scranton knowing that GARANIN was incarcerated and could not take any actions to defend himself.

194.   T. GALLAGHER's aforesaid actions were meant to harm GARANIN and were effectuated with scienter and animus against GARANIN.

195.   AURIC INVESTMENT HOLDINGS LLC had a constitutionally protected interest in the 300-302 William Street, Scranton, PA 18508 property.

196.   AURIC INVESTMENT HOLDINGS LLC was criminally charged and found guilty of a criminal act under the laws of the City of Scranton.

197.   AURIC INVESTMENT HOLDINGS LLC was eventually exonerated by the Superior Court of Pennsylvania after paying its criminal sentence fee.

198.   The COUNTY and specifically the Lackawanna County Clerk of Judicial Records is responsible for issuing refunds for any payments that were made and overturned by a higher Court.

199.   The COUNTY treated GARANIN differently as other similarly situated individuals and / or companies who were refunded their fees.

200.   CATHERINE A. GALLAGHER, as the Solicitor of the Lackawanna COUNTY Clerk of Judicial Records, refused to even provide her position and / or answer GARANIN's and AURIC INVESTMENT HOLDINGS' request for a refund.

201.    All other criminal defendants who overpaid fees and / or were exonerated are refunded by the Lackawanna COUNTY Court of Judicial Records, except for GARANIN. Specifically, Amar Bell has been refunded fees that he has overpaid based on criminal sentences.


## COUNT V

### Violation of the Constitution of Pennsylvania Article 5, Section 17(b)

Pendent jurisdiction

(GARANIN v. T. GALLAGHER)


202.    The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

203.    T. GALLAGHER has acted outside his judicial capacity to deprive GARANIN of his constitutional rights which is strictly prohibited by the Constitution of the Pennsylvania Article 5, Section 17(b) which states in pertinent part that "Justices and judges shall not engage in activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court."


## PRAYER FOR RELIEF


**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated as to Counts I and II, seek the following relief:

1. That, at the earlies possible time, plaintiffs be allowed to give notice of this collective action as to Count I, or that the Court issue such notice, to the members of the Recycling Center Prisoner Employees Collective (as defined above).  Such notice shall inform that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were coerced into working at the Recycling Center while incarcerated and included in the "community service program" for early release or work-release;

2. Certification of the Count I claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3. Designation of plaintiff Vsevolod Garanin as Class Representative on behalf of the Recycling Center Prisoner Employees Collective;

4. Awarding plaintiff and the Recycling Center Prisoner Employees class their actual damages and any applicable statutory damages;

5. Issuance of a declaratory judgment that the practices complained of in Count I of this Complaint are unlawful under the Trafficking Victims Protection Act;

6. An injunction requiring defendants to pay all statutorily-required damages and prohibiting any further violation of the Trafficking Victims Protection Act and its aiding and abetting;

7. A reasonable incentive award for the plaintiff Vsevolod Garanin to compensate him for the time he has spent attempting to recover damages for the Recycling Center Prisoner Employees Class;

8. That, at the earlies possible time, plaintiffs be allowed to give notice of this collective action as to Count II, or that the Court issue such notice, to the members of the Nolle

Prossed Individuals Collective (as defined above). Such notice shall inform that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they signed a plea agreement which contained a material misrepresentation of the true nature of the status of other charges being Nolle Prossed prior to September 21, 2020 when the county wide *false impression* was corrected.

9. Certification of the Count II claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

10. Designation of plaintiff Vsevolod Garanin as Class Representative on behalf of the Nolle Prossed Individuals Collective;

11. Awarding plaintiff and the Nolle Prossed Individuals class their actual damages and any applicable statutory damages;

12. Issuance of a declaratory judgment that the practices complained of in Count II of this Complaint are unconstitutional and a deprivation of procedural due process;

13. An injunction requiring defendants to pay all statutorily-required damages and appointment of a special master to review all plea agreements signed in Lackawanna County with the *aforementioned* false impression;

14. A reasonable incentive award for the plaintiff Vsevolod Garanin to compensate him for the time he has spent attempting to recover damages for the Nolle Prossed Individuals;

15. A declaratory judgment that the practices and acts complained of herein as to Count III are illegal and unconstitutional;

16. Compensatory and punitive damages as to Count III;

17. A declaratory judgment that the practices and acts complained of herein as to Count IV are illegal and unconstitutional;

18. A permanent injunction as to Count IV, enjoining the defendants, their agents and employees of enforcing the COUNTY's and the HOUSING AUTHORITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way

19. A declaratory judgment that the practices and acts complained of herein as to Count IV are illegal and unconstitutional;

20. A declaratory judgment that the acts complained of herein as to Count IV are illegal and unconstitutional;

21. Appropriate statutory penalties for each of the defendants for each Count;

22. Pre and post-judgment interest;

23. Attorney's fees and costs of this action;

24. Such other relief as this Court shall deem just and proper.

Date: February 20, 2023                                    RESPECTFULLY SUBMITTED:

VSEVOLOD GARANIN
PRO SE
10 Tupelo Court
Staten Island, NY 10306
(917) 434-1765 - Telephone
(347) 331-0941 – Fax
Steve@GCapHoldings.com - Email